Good morning, Your Honor. May it please the Court, Arwin Swink, appearing on behalf of Petitioner Sukhveer Singh Pannu. Pursuant to Ahmed v. McKasey, this case must go back to the Board for reconsideration of the denial of Mr. Pannu's motion to reopen. In addition, the Court must also reverse the Board's decision upholding the immigration judge's erroneous denial of asylum, given that the immigration judge wholly failed to consider significant evidence before her. The immigration judge principally relied on a report submitted by the government in concluding that two of the documents submitted on Mr. Pannu's behalf were fraudulent. Mr. Pannu, however, provided compelling evidence substantially undermining the contents of the government's report, specifically the conclusions thereof. Now, while the immigration judge chose to accept the evidence submitted by the government at face value, she denied or rejected Mr. Pannu's evidence out of hand, claiming that her decision rested on Mr. Pannu's, quote, complete failure to challenge or rebut the government's evidence. Well, how did that – what evidence did he present that explains the doctor's – the difficulties in the doctor's affidavit? Your Honor, Mr. Pannu submitted a detailed report prepared by a human rights attorney in India, which is – which the I.J. could have also said and did say wasn't really  Actually, Your Honor. because it was by a lawyer, didn't say, you know, give any indication he really was and all that stuff. Yes, Your Honor. That was one of the reasons relied upon by the immigration judge. But Mr. Pannu – the preparer of the affidavit or the investigation, Attorney Sodhi, had submitted a detailed explanation of his qualifications that went – that covered over two pages of his investigation. Now, the contents of that recitation of his credentials were identical to what the immigration judge would have found in a CD. Let me just get pointed here with respect to the doctor, because that really does make a difference, it seems to me. The doctor – the evidence was that the – I mean, or your client testified that he was treated in 1994 and 1988, if I've got the dates right, by Dr. Gupta who was a senior medical – had a senior medical position at a particular hospital, the evidence showing that he was – that no such person was ever employed there in any position. And even Gupta's declaration doesn't indicate that he provided any treatment in 1988. So why couldn't the I.J. reasonably find that that's just incredible? Well, Your Honor, there are two issues there. The first, that Dr. Gupta's original letter did not indicate the 1988 treatment. There is a reason – a wholly reasonable explanation provided for that, which is that the injuries treated in the 1988 – after the 1988 arrest and torture were actually very minimal. Mr. Ponis. How do you square that, though, with Dr. Gupta's first affidavit that says he wasn't at the civil hospital until May of 1990? Your Honor, I believe the original affidavit states that he was a senior medical officer in 1994, and that – But we're talking about 1988. Yes, Your Honor. My understanding was – My understanding of the original affidavit was that he was posted at the hospital in that particular capacity in 1990, not that he had never worked at that hospital prior to that date. And in fact – He doesn't fix that with his second affidavit, though, does he? Unfortunately, the investigator didn't ask about the 1988 treatment. The investigation focused on his posting at the hospital in 1994, which goes back to the previous issue, which was raised. And – Well, I guess all of this goes to a question of whether, combined with the conflicting testimony and the – I.J. gave all this some weight, but whether I.J. could draw conclusions based on the investigator's fairly careful, straightforward analysis, Dr. Gupta doesn't clear up his own situation. So at best, aren't you left with a wash? Well, had the immigration judge actually engaged in the type of weighing of the evidence that you've proposed, then that is one conclusion that she could have reached. But the immigration judge never made it that far. She just rejected the evidence out of hand based on the CV issue, the unavailability for Cross, and her third reasoning, which was her conclusion that conflicting statements under oath had been provided. Now, that is just wrong. In fact, none of the government's evidence was taken under oath. So the only statements that were submitted under oath were those contained in the rebuttal evidence. And then the immigration judge's rejection on the other basis that Mr. Panu's – the preparers of Mr. Panu's evidence were unavailable for cross-examination was an issue that was equivalent between the government's own preparers and Mr. Panu's – the preparers of the evidence submitted on Mr. Panu's behalf. The IJ in effect gave Panu a year to do something about the government's forensic expert. Well, Your Honor, Mr. Panu doesn't actually challenge that the government investigators heard what they heard. So it's at best unclear whether any interrogatory submitted to the government investigators would have actually yielded any additional information. The government investigators didn't take the next step in the investigation, which was to contact Dr. Gupta himself to verify his professional standing, which was one of the things that the preparers of the rebuttal evidence did. It's not even clear he exists. Well, actually, Your Honor, in the rebuttal evidence, substantial documentation of his – Dr. Gupta's professional credentials was submitted, including his medical practitioner's license and the affidavits of several other doctors who were familiar with Dr. Gupta. But as noted, the immigration judge never got there. She never actually evaluated that evidence and assessed it or weighed it in relation to the government's evidence. She just never considered the explanations contained therein. What is my standard review here, Counselor? Substantial evidence, Your Honor. Substantial evidence. So you're suggesting that on this record I can find no substantial evidence to sustain the reasonable fact finder here? Now, you've made good argument about there might be other evidence which would be conflicting or there might be other evidence which would be a good argument to make to the jury. But the bottom line is this reasonable fact finder had all that evidence in front of it and relied on other evidence, which it said was substantial evidence, to make its finding. Now, I guess my worry is what part of that substantial evidence is not substantial? There are many kind of things here in this record that were pretty easy to see that there's evidence to go where they're going. Well, Your Honor, I think actually our concerns with the immigration judge's failure to grapple with the evidence are really principal here. And we are asking for a remand to allow the board to consider that evidence in the first instance. I am not asking this court to weigh the evidence of the two competing investigations which the immigration judge failed to weigh. So you're really saying, as I understand your argument, that the IJ did not make a proper weighing? Yes, Your Honor, that the immigration judge... But isn't that substantial evidence then? I mean, if all we're talking about is the weight she gives to evidence or the weight she doesn't give to evidence, you're really arguing your evidence is more weight than the other evidence, but there is evidence there. That's my worry about your argument. I'm sorry, Your Honor. Perhaps I misspoke. What I meant to indicate was that the immigration judge never actually got to the point of weighing the evidence. Because she disregarded the evidence submitted on Mr. Panu's behalf out of hand, she never engaged in the requisite inquiry. If I can reserve the remaining minutes? Surely. Thank you. Mr. Julius. Good morning, Your Honors. May it please the Court. Derek Julius on behalf of Respondent Attorney General Eric Holder. Respondent respectfully requests that this Court deny the consolidated petitions for review in this case. I take it you agree or at least don't disagree that it needs to go back on the reopening question. We do disagree with that, Your Honor. Again, in light of Ahmaud. We believe that Ahmaud is distinguishable from this case. Given the concerns that were raised in Ahmaud, the Ninth Circuit expressed concern that DHS would be able to unilaterally veto a motion to reopen for any or no reason at all. In this case, we don't just have any reason or no reason at all. We have a reason that's supported by the record. But did the BIA suggest the reason? I mean, the reason that you suggest is that there is substantial evidence that, in fact, the petitioner was not telling the truth. But I don't find anything in the BIA record or decision, sorry, that would suggest they relied on that at all. Yes, Your Honor. The language of the Board's decision says that in reciting the Velarde factors as the limited exception to reopening, they do note that DHS raised an objection on discretionary grounds, that discretionary ground being that Mr. Panu had testified incredibly and at a minimum provided false testimony. There is a part of the BIA decision which talks about credibility as to their reasoning here? No, Your Honor. I did not mean to infer that. The BIA decision makes reference to the discretionary opposition made by DHS. And when I spoke about the grounds for that opposition, I was referring to the DHS brief supported in opposition filed with the Board. So if, in fact, the BIA did not affirm on the ground of incredibility or did not grant or deny the motion to reopen on that ground, don't I under Ernesto Navas need to return this back to the BIA to have them consider these situations? Because I only find one reason that they might have not granted the motion to reopen, and that is the government didn't want them to. They opposed it. The government submits, Your Honor, that the Board denied as a matter of discretion because the reason raised by DHS was the credibility finding made by the immigration judge and affirmed by the Board in the prior decision issued by the Board. Because the Board had already evaluated that evidence, that it had come to the same conclusion that Mr. Panu had submitted false testimony or provided incredible testimony, that would be reason enough to deny the motion to reopen on discretionary grounds. And for that reason, the Board did not. Ginsburg. That would be great, but it doesn't say that in this one-page piece of paper that we have from the BIA. That's the difficulty. I understand that intellectually that might have been what happened, but whenever we do that, when we imagine what might have happened at the BIA, we're always told quit doing that and send it back. So I'm wondering why we shouldn't just do precisely what we've been asked to do by the Supreme Court in this case. Again, Your Honor, the government just submits that it is distinguishable from Ahmed v. Mukasey and the Board's precedent decision in matter of lameness. It's also distinguishable from matter of lameness in that the Board in that instance had concerns with the fifth factor of Velarde, that the immigration judge who denied the motion to reopen had not taken consideration of the merits of DHS's opposition, which as here, as I had previously indicated, they had already fully considered the adverse credibility determination in the prior appeal. And so for that reason, there would be no need to send it back. It's almost a futility argument to send it back because we know that the Board had already spoken on the issue of adverse credibility and had agreed with the immigration judge. Is there a really good case that says that I can do that? A real good precedent that I could cite in a mem dispo or something like that that would say automatic? I mean, it seems to me that Judge McEwen, my good colleague, and my other good colleague, Judge Reimer, pointed out exactly what our problem is. I don't see anything that says, well, you can go look at other things they've done and that would give you good reason to do it. I understand, Your Honor. I am not familiar with a case such as that. Would you address this credibility difficulty? So we have the initial affidavits and then we also have a government investigator, but we also have either explanation or more detail provided, for example, by Dr. Gupta and by the attorney. In that posture, what should the I.J. have done in order to sort out the discrepancies? Did the I.J. have an obligation, as counsel has argued, to at least go a little bit further to make a determination rather than ignoring the evidence? I disagree with opposing counsel's characterization of it being completely ignored. As you had indicated, the immigration judge gave Mr. Panu over a year to confront the fraudulent documents that he'd been presented with through the government report. The immigration judge suggested that he propound interrogatories, that he notice a deposition or that he move for a telephonic conference so that he could cross-examine the government's investigator. And over a year, he failed to do that. He instead chose to pursue this route of having his own investigation conducted and just submitted additional documents. When the hearing was reconvened for him to submit those documents, he offered no redirect testimony. He called no more witnesses to testify in open court. He simply proffered more paper when the ultimate problem had been suspected fraudulent documents in the first place. So the judge is confronted with a situation in which she has two sets of documents and she has to figure out what is the truth. And in weighing the evidence, the immigration judge determined that the evidence was fraudulent, and that was the partial basis for her rendering of an adverse credibility determination in this instance. There's precedent on point regarding the submission of fraudulent evidence. In Desta v. Ashcroft's 2004 decision from the Ninth Circuit, the Ninth Circuit concluded that the submission of fraudulent documents going to the heart of one's claim can justify an adverse credibility determination, which is exactly what happened in this case, Your Honors. And as we've noted, the standard here is substantial evidence that immigration judge's determination should not be overturned unless the evidence compels a conclusion to the contrary. Moreover, the mere possibility of drawing two different conclusions from the record is not a basis upon which to reverse the decision of the agency. This Court may not reverse simply because it disagrees with the Board's evaluation of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Here we have numerous inconsistencies in addition to the fraudulent document problem. Mr. Panu disclosed on his asylum application that he had only been a member of the All-India Sikh Student Federation, but yet he appears to have had more problems as a result of alleged membership in the Akali Dal Party. Membership in the Akali Dal Party was never mentioned in his asylum application, nor was it mentioned to the asylum officer. In trying to support his membership and prove his membership in the Akali Dal Party, he proffered a document that, even though he testified he joined in 1991, the document indicates that he actually joined in 1993. The document says that he was he had agreed to become a member of Akali Dal. That's not consistent with an existing member. Moreover, the date of that letter is at issue. He testified rather adamantly that he renewed his membership in 1993 after the October 31st anniversary of the Indira Gandhi assassination. However, the letter is dated February 10th, 1993, several months before he vehemently testified that he had renewed his membership. And membership in this organization is more than a mere detail. It is the organization on whose behalf he allegedly engaged in these political activities, which are the basis of his claim. His relationship with this organization is therefore fundamental, and any inconsistency with regard to this membership goes to the heart of his claim. The immigration judge's adverse credibility determination is also supported by the demeanor evidence. She noted that as Mr. Panu talked, he seemed as though he was reciting a story and gave no real emotion that she could see. In their opening brief, opposing counsel suggests that the Court should take judicial notice that post-traumatic stress disorder has a component of a lack of affect. However, that was never an explanation proffered to the immigration court or to the board, and for that reason, it should not be considered by this Court. For the foregoing reasons, Your Honor, I respectfully submit that these consolidated petitions for review should be denied. Okay. Thank you. Should you wish this one? Thank you, Your Honors. Unfortunately, we don't have time to go through each of the bases relied upon by the immigration judge for her denial. I would just like to touch on the demeanor issue raised by opposing counsel, which I think is particularly salient. The immigration judge's statement that Mr. Panu did not display the amount of emotion he, quote, should have displayed is nothing more than speculation, and this Court has repeatedly cautioned against this type of boilerplate finding that doesn't really give us any basis to review the immigration judge's decision. Even without the judicial notice issue, I think this Court has repeatedly rejected precisely this type of demeanor-based finding because it's just too general, too speculative, and relies upon the immigration judge's own conjecture. Thank you, Your Honors. Okay. Thank you, counsel. The matter just argued will be submitted.
judges: Rymer, McKeown, Smith M.